UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **PERZIA BAKARI ARMSTRONG,** <br> **TDCJ #717565,** <br> Plaintiff, <br><br> v. <br><br> **MID-LEVEL PRACTITIONER JOHN** <br> **B. CONNALLY UNIT, PATIENCE** <br> **CAIN, IN HER OFFICIAL AND** <br> **INDIVIDUAL CAPACITIES, ET AL.,** <br> Defendants. | §§§§§§§§§§§§§§ | SA-18-CV-00677-XR |

### ORDER

Before the Court are Plaintiff Perzia Bakari Armstrong's ("Armstrong") Amended Complaint pursuant to 42 U.S.C. § 1983, Defendants Patience Cain, Jolly Herrera, Gloria Cruz, and Debra Gloor's motion for summary judgment, Defendant Dr. Walter J. Meyer's motion for summary judgment, and Armstrong's responses thereto. (ECF Nos. 31, 42, 44–45, 46–48, 54, 63, 71, 91, 98, 108). Based on the analysis set out below, Defendants' motions for summary judgment are **GRANTED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 1995, Armstrong pled "no contest" to two counts of aggravated sexual assault and one count of aggravated kidnapping. *Armstrong v. State*, 911 S.W.2d 133, 134 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd). The trial court sentenced Armstrong to life imprisonment on each count, sentences to run concurrently. *Id.* Armstrong contends that although she was born with male genitalia, she has identified as female since childhood and has "lived the life of a woman in

a compromised form since her childhood." (ECF No. 31).[1] In July 2016, Defendant Dr. Walter Meyer of the University of Texas Medical Branch ("UTMB") diagnosed Armstrong with gender dysphoria. (ECF No. 31). The American Psychiatric Association defines "gender dysphoria" as a "marked incongruence between one's experienced/expressed gender and assigned gender of at least 6 months duration, as manifested by" at least two of the six following factors: (1) marked incongruence between one's experienced or expressed gender and primary and/or secondary sex characteristics; (2) a strong desire to be rid of one's primary and/or secondary sex characteristics; (3) a strong desire for the primary and/or secondary sex characteristics of the other gender; (4) a strong desire to be of the other gender; (5) a strong desire to be treated as the other gender; and (6) a strong conviction that one has the typical feelings and reactions of the other gender. *Gibson v. Collier*, 920 F.3d 212, 217 (5th Cir. 2019) (quoting *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5)). Armstrong contends she is in great mental and physical distress due to her gender dysmorphia, threatening self-castration, attempting suicide, and engaging in drug use to deal with her distress. (ECF No. 31).

After diagnosing Armstrong, Dr. Meyer prescribed hormone therapy to be administered every two weeks. (*Id.*). From the outset, Armstrong claimed hormone therapy was insufficient and requested that Dr. Meyer and medical personnel at the Connally Unit refer or recommend her for sexual reassignment surgery ("SRS"), but all of her requests were denied. (*Id.*). The prescribed hormone therapy continued, but there were times when Armstrong's injections were delayed. (*Id.*).

---

[1] Armstrong identifies as a transgender woman and uses female pronouns in her filings. Accordingly, for consistency and clarity, this Court will refer to Armstrong using female pronouns. *See, e.g., Wilson v. Epps*, 776 F.3d 296, 298 n.1 (5th Cir. 2015) (referring section 1983 transgender plaintiff as male because plaintiff used male pronouns in his filings).

In 2018, Armstrong, who is in the custody of the McConnell Unit of the Texas Department of Criminal Justice ("TDCJ") and was previously in the custody of the Connally Unit, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. (ECF Nos. 1, 31). Armstrong brought suit against Dr. Meyer in his official and individual capacities, four members of the medical staff at the Connally Unit in their official and individual capacities, UTMB, Correctional Managed Health Care[2], and TDCJ. (ECF No. 31). Armstrong alleged the defendants: (1) violated her rights under the Eighth Amendment by denying her request for SRS and by delaying and interrupting her scheduled hormone therapy; (2) violated her right to equal protection guaranteed by the Fourteenth Amendment by denying her request for SRS; and (3) violated her right to equal protection guaranteed by the Fourteenth Amendment by refusing to give her access to "personal items approved and available to inmates in female institutions." (*Id.*). Armstrong sought injunctive relief against UTMB, CMHC, and TDCJ, and compensatory and punitive damages against all Defendants. (*Id.*). In response, all Defendants except TDCJ filed motions to dismiss. (ECF No. 38, 42, 45).

Upon review, this Court granted UTMB's motion to dismiss, stating Armstrong's claims were barred by Eleventh Amendment immunity. (ECF No. 77); *see, e.g., Sissom v. Univ. of Tex. High Sch.*, 927 F.3d 343, 347 (5th Cir. 2019) (holding that when state agency is named as defendant, Eleventh Amendment bars suits for money damages and injunctive relief unless state has waived immunity). In the Order, the Court found CMHC was not a separate state agency, but merely a unit of UTMB. (*Id.*). Thus, Armstrong's claims against CMHC were dismissed based

---

[2] Armstrong named "Correctional Managed Health Care" as a defendant in this 1983 action. (ECF No. 31). First, this entity is actually known as Correctional Managed Care. https://www.utmb.edu/cmc/ (last visited Jan. 9, 2020). It was established as a partnership with TDCJ in 1994 and provides managed health care for prisoners in numerous adult and juvenile correctional facilities throughout the state. *Id.* To avoid confusion, the Court will refer to the entity using as Armstrong did in her Amended Complaint – "Correctional Managed Health Care" or CMHC. Second, and more importantly, CMCH is not a separate state agency; rather, CMHC is a unit of UTMB, and therefore, Armstrong's claims against CMHC are effectively claims against UTMB, which is also a named defendant. *See Cooper v. Johnson*, 353 Fed. App'x 965, 966 (5th Cir. 2009); https://www.utmb.edu/cmc/.

on Eleventh Amendment immunity as well. (*Id.*). As for TDCJ, it did not move for dismissal; however, in response to Armstrong's Motion for Default Judgment Against TDCJ, the Court found that as a state agency, Armstrong's claims against TDCJ were also barred by Eleventh Amendment immunity. (ECF No. 82). Accordingly, the Court denied Armstrong's motion for default judgment and dismissed her claims against TDCJ. (*Id.*). Thereafter, the Court considered the motions to dismiss filed by Dr. Meyer and medical personnel from the Connally Unit—Nurse Practitioner Patience Cain, Registered Nurse Jolly Herrera, Licensed Vocational Nurse Gloria Cruz, and Senior Practice Manager Debra Gloor. (ECF Nos. 42, 45).

In reviewing the remaining motions to dismiss and Armstrong's responses thereto, the Court found Armstrong's claims against Dr. Meyer and the Connally Unit staff members were barred by Eleventh Amendment immunity. (ECF No. 90); *see, e.g., Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 321 (5th Cir. 2015) (holding suit for retrospective relief, including monetary damages, against state official or employee in official capacity is barred by Eleventh Amendment). Accordingly, the Court dismissed Armstrong's claims against Dr. Meyer and the Connally Unit staff members. (ECF No. 90). The Court declined, however, at that time to address Armstrong's claims against these Defendants in their individual capacities. (*Id.*). In addition, the Court, *sua sponte*, converted these Defendants' motions to dismiss into motions for summary judgment and ordered Armstrong to show cause with evidence why summary judgment should not be granted in favor of Dr. Meyer and the Connally Unit staff members. (ECF No. 90); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (recognizing federal district courts are "widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence."). Thus, the Court must now determine whether Dr. Meyer and the Connally Unit staff members are entitled

to summary judgment in their individual capacities or if Armstrong produced evidence precluding it.

## ANALYSIS

As set out above, Armstrong has three claims remaining against Dr. Meyer and the Connally staff members in their individual capacities: (1) an Eighth Amendment claim based on denial of SRS surgery and delays or interruptions to her hormone therapy; (2) an Equal Protection Clause claim based on denial of access to personal "female" commissary items; and (3) an Equal Protection Clause claim based on denial of SRS surgery. (ECF No. 31). In response, these remaining Defendants contend they are entitled to judgment as a matter of law in their individual capacities on all of Armstrong's claims because she has failed to state a non-frivolous claim.
(ECF Nos. 42, 45)

### *Standard of Review*

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Funches v. Progressive Tractor & Implement Co., L.L.C.*, 905 F.3d 846, 849 (5th Cir. 2018). Where the nonmovant bears the burden of proof at trial, the summary judgment movant must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the nonmovant's claim; the movant may, but need not, negate the elements of the nonmovant's case to prevail on summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). A complete failure of proof as to an essential element of the nonmovant's case renders all other facts immaterial. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant shows entitlement to judgment as a matter of law, the nonmovant must bring forward *evidence* to create a genuine issue of material fact. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001). Allegations in the nonmovant's complaint are not evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The nonmovant must go beyond the pleadings, providing actual evidence to show a genuine issue of material fact for trial. *Giles*, 245 F.3d at 493.

The court must draw all reasonable inferences in favor of the nonmovant, refraining from making credibility determinations or weighing the evidence. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328–29 (5th Cir. 2017); *Hunt v. Pierson*, 730 Fed. App'x 210, 212 (5th Cir. 2018) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Hunt*, 730 Fed. App'x at 212. The Fifth Circuit requires a nonmovant to submit "significant probative evidence" from which the jury could reasonably find for the nonmovant. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). The nonmovant's evidence must raise more than some "metaphysical doubt as to the material facts." *Funches*, 905 F.3d at 849. A genuine issue of fact does not exist "if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Hunt*, 730 Fed. App'x at 212 (quoting *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014)).

With regard to claims of qualified immunity asserted in response to civil rights actions such as this one, the standard is different with regard to the burden, i.e., a state official or

employee's good faith assertion of qualified immunity defense alters the usual summary judgment burden of proof. *See Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Once the state official or employee asserts qualified immunity, the *nonmovant* has the burden to show there is a genuine and material dispute as to whether qualified immunity applies. *See Thompson v. Upshur Cty.*, 245 F.3d 447, 356 (5th Cir. 2001) ("We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs."); *Dennis v. Martin*, 2:15-CV-0330, 2018 WL 3598770, *2 (N.D. Tex. June 22, 2018) ("A qualified immunity defense, however, alters the usual summary judgment burden of proof, such that governmental employees need only assert the defense in good faith, putting forth no evidence, to shift the burden to the non-movant to show the defense does not apply."). Despite the shift in the burden of proof, the court must still draw all reasonable inferences in favor of the nonmovant. *Brown*, 623 F.3d at 253 ("The plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor."). However, the plaintiff is still required to provide more than mere allegations or unsubstantiated assertions. *Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018).

### *Eighth Amendment Claims – Deliberate Indifference*

As to her civil rights claim based on the Eighth Amendment, Armstrong contends Dr. Meyer and the Connally staff members violated her rights by denying SRS and delaying or interrupting her hormone replacement therapy. (ECF No. 31). The defendants contend the evidence shows an absence of deliberate indifference, which is required to establish a civil rights violation under the Eighth Amendment for an inmate's claims of absent or inadequate medical care.

(ECF Nos. 42, 45); *see, e.g., Gibson*, 920 F.3d at 216 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

1. <u>Applicable Law</u>

The Eighth Amendment prohibits cruel and unusual punishment. U.S. CONST., amend. VIII. It can be cruel and unusual punishment to deny an inmate essential medical care. *Gibson*, 920 F.3d at 216. As stated by the Supreme Court, "deliberate indifference" to an inmate's serious medical needs violates the Eighth Amendment. *Gamble*, 429 U.S. at 104. To establish deliberate indifference, an inmate must first demonstrate a serious medical need and then show the defendant acted with deliberate indifference to that need. *Gibson*, 920 F.3d at 219.[3]

"'[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'" *Id.* (quoting *Gamble*, 429 U.S. at 104). Courts have often described the foregoing as an extremely high or demanding standard. *See id.*; *see also, e.g., Domino v. Tex. Dep't of Criminal. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Neither negligence (medical malpractice), inadvertence, nor an inmate's disagreement with his or her treatment is sufficient to state a claim under the Eighth Amendment, i.e., constitutes deliberate indifference. *Gamble*, 429 U.S. at 105–06; *Gibson*, 920 F.3d at 219 (citing *Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018)). Rather, the Eighth Amendment proscribes care so unconscionable as to fall below society's minimum standards of decency. *Gibson*, 920 F.3d at 219. An inmate seeking relief under the Eighth Amendment must show state officials or employees acted with malicious intent, i.e., with the knowledge they were withholding medical necessary care. *Gibson*, 920 F.3d at 219. This has been described as "wanton infliction of pain" or an act "repugnant to the conscience of mankind." *Gamble*, 429 U.S. at 105–06. Thus, courts have held that to succeed on this type of claim, an inmate must

---
[3] The Court assumes without deciding that Armstrong presents a serious medical need.

show officials or employees "refused to treat him, ignored his complaints intentionally treated him incorrectly, or engaged in conduct that would clearly evince a wanton disregard" and did so knowing of and disregarding an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Gibson*, 920 F.3d at 220. "There can be no intentional or wanton deprivation of care if a genuine debate exists within the medical community about the necessity or efficacy of that care." *Gibson*, 920 F.3d at 220. Although a single discounting expert would not automatically defeat a medical consensus, universal acceptance is not achieved when there is "robust and substantial good faith disagreement dividing respected members of the expert medical community." *Id.* Without universal acceptance, there can be no claim under the Eighth Amendment. *Id.*

2. *Sexual Reassignment Surgery*

The Fifth Circuit's recent decision in *Gibson* is dispositive of this issue as it regards Armstrong's request for SRS. *See* 920 F.3d at 215–28. In *Gibson*, the medical records submitted by the inmate showed a gender dysphoria diagnosis followed by hormone therapy. *See id.* at 217. Despite hormone therapy, the inmate sued under section 1983, claiming a violation of the Eighth Amendment's prohibition against cruel and unusual punishment because she was denied the right to SRS, which she claimed was the only way to end her continued suffering. *See id.* The district court granted summary judgment in favor of the defendant, concluding the inmate failed to present a genuine dispute of material fact with regard to deliberate indifference. *Id.* The district court found the inmate's reliance on standards of care issued by the World Professional Association for Transgender Health ("WPATH") was insufficient because she did not produce expert testimony to show the WPATH-suggested treatment option of SRS is so universally

9

accepted that a failure to provide it amounts to deliberate indifference. *Id.* The Fifth Circuit agreed.

The Fifth Circuit concluded, as had the First Circuit in a previous case, that the WPATH standards of care, which declares SRS is effective and necessary in some cases, does not reflect consensus, but is merely one side "in a sharply contested medical debate over" SRS. *Id.* at 221 (citing *Kosilek v. Spencer*, 774 F.3d 63, 68 (1st Cir. 2014) (en banc)). Thus, the Fifth Circuit held the inmate's claim failed "due to the undisputed medical controversy over sex reassignment surgery," which meant as a matter of law there was no deliberate indifference. *Id.* at 226.

Moreover, the court held denial of SRS could not meet the "unusual" prong of the Eighth Amendment's prohibition against "cruel and unusual" punishment because only a single state, California, has ever provided SRS to an inmate, and California only did so in 2017 as part of the settlement of a federal lawsuit. *Id.* at 227. Prior to that, no prison in the United States had ever provided SRS to an inmate. *Id.* at 227–28. Accordingly, the denial of SRS could not be "unusual" under the plain text and original meaning of the Eighth Amendment, regardless of any facts an inmate might present. *Id.* at 228.

In this case, the summary judgment evidence includes Armstrong's medical records that show a diagnosis of gender dysphoria followed by months of hormone therapy, which has increased Armstrong's estrogen level and suppressed her testosterone level, resulting in breast development and decreased testicle size. (ECF No. 71–2, pp. 2–14, 98–2, pp. 2–342). Armstrong was also treated with prescription drugs for her depression and over-the-counter medications for pain. (*Id.*). Although Armstrong claims her medical records were "doctored" and disagrees that hormone therapy is insufficient, insisting as the inmate in *Gibson* did that the only treatment that will fully end her suffering is SRS, these are simply Armstrong's beliefs, unsupported by

summary judgment evidence. Armstrong, like the inmate in *Gibson*, relies exclusively on the WPATH standards of care for her contention that SRS is a universally accepted treatment for her condition. (ECF No. 31). However, Armstrong did not produce any evidence to establish these standards have become universally accepted since *Gibson*, wherein the Fifth Circuit recognized the standards reflect merely one side in a sharply divided debate over SRS. *See Gibson*, 920 F.3d at 221. Additionally, Armstrong produced no evidence to show that since the decision in *Gibson* that other prisons have provided inmates with SRS so as to demonstrate the defendants' denial of her request for SRS was "unusual" under the Eighth Amendment.

Accordingly, the Court finds summary judgment in favor of the defendants in their individual capacities is proper with regard to Armstrong's claim that denial of SRS violates her rights under the Eighth Amendment. The summary judgment evidence establishes the defendants treated Armstrong with the hormone therapy, an accepted treatment for gender dysphoria, and that the treatment affected her hormone levels and physical appearance as intended. (ECF No. 71–2, pp. 2–14, 98–2, pp. 2–342). Dr. Meyer specifically found Armstrong had a "good response to the estrogen without any sign of side effects." (ECF No. 71–2, p. 12; *see* 98–2, p. 18). Armstrong's disagreement with this course of treatment and request for a treatment not universally accepted in the medical community for her condition does not establish refusal to treat or any other conduct evincing a wanton disregard for her medical needs as required for deliberate indifference. Thus, the record establishes an absence of evidence with regard to deliberate indifference, entitling Defendants to summary judgment.[4] *See Lujan*, 497 U.S. at 885.

---

[4] *See* Tara Dunnavant, *Bye-Bye Binary: Transgender Prisoners and the Regulation of Gender in the Law*, 9 FED. CTS. L. REV. 15, 26 (2016) ("The difficulty of meeting the Eighth Amendment deliberate indifference standard ... means that many trans prisoners are unsuccessful with such claims.").

Armstrong failed to produce even a scintilla of evidence to preclude summary judgment with regard to this claim, providing only her personal beliefs and conclusion in response.

3. *Delay in Treatment*

In addition to her Eighth Amendment claim based on denial of SRS, Armstrong contends Defendants Cain, Herrera, Cruz, and Gloor violated her rights under the Eighth Amendment by delaying or interrupting her hormone therapy. (ECF No. 31). As with her prior Eighth Amendment claim, Armstrong can only recover if these defendants acted with deliberate indifference, i.e., refused to treat her, ignored her complaints, intentionally treated her incorrectly, or otherwise acted with wanton disregard to her serious medical needs. *See Gamble*, 429 U.S. at 104; *Domino*, 239 F.3d at 756.

Armstrong claims that from December 28, 2017 to March 2, 2018, Cain, Herrera, Cruz, and Gloor delayed her hormone shots, and in one instance, Herrera merely pretended to administer an injection. (ECF No. 31, 71–2, p. 8). Armstrong contends these actions caused her to suffer withdrawal due to hormone imbalances, resulting in physical and emotional pain. (*Id.*).

The summary judgment evidence shows Armstrong presented these allegations to Dr. Meyer. (*Id.*). The evidence further shows that blood tests ordered by Dr. Meyer contradicted Armstrong's claims that her treatments were denied or delayed. According to the medical records, at the time Armstrong claimed she had been denied or had to wait for hormone injection, her blood level "support[ed] that she did get the estrogen injection since the testosterone was suppressed into the female rang [sic] and the estrogen level was 32 and the gonadotropins were suppressed." (*Id.*). Dr. Meyer set out in the medical record that these results, along with Armstrong's "significant breast growth" establish Armstrong had been "getting the medication at

12

least close to what was really ordered." (*Id.*). He opined that he did not think Armstrong "appreciates the changes these medications are giving her." (*Id.*). Thus, the summary judgment evidence shows Armstrong was receiving her hormone therapy either on schedule or "close to" what Dr. Meyer ordered and suffered no adverse medical results from any minor delays. (*Id.*). Armstrong's conclusory assertions to the contrary are insufficient to negate a right to judgment as a matter of law due to an absence of deliberate indifference. *See Hunt*, 730 Fed. App'x at 212.

Moreover, although there may have been some delay in treatment, Armstrong herself admits she was told any delays in administering the hormones were due to logistical problems in obtaining the medications, which belies a claim of deliberate indifference. (ECF No. 31); *see Gamble*, 429 U.S. at 105–06. Although Armstrong believes the medical staff lied about the unavailability of her hormones, these constitute nothing more than her personal beliefs and conclusions, which are insufficient for purposes of summary judgment. *See id.* The Fifth Circuit has recognized that delays in medical care only rise to an Eighth Amendment violation if there was deliberate indifference and real and substantial harm. *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006). As noted above, the medical records establish a change in hormone levels and physical changes that Armstrong simply refused to recognize. (ECF No. 71–2, pp. 2–14, 98–2, p. 18). Although Armstrong asserts she suffered due to the delays, these are also merely conclusory assertions, not probative evidence as is necessary to defeat summary judgment. *See Hunt*,
730 Fed. App'x at 212.

Accordingly, the Court finds summary judgment in favor of Defendants Cain, Herrera, Cruz, and Gloor in their individual capacities is proper with regard to Armstrong's claim that delays in her receipt of hormone therapy violated her rights under the Eighth Amendment. The

medical records establish there was no delay in treatment, and even if there was a delay at times, it was due to logistics, which constitutes negligence as opposed to a wanton disregard for Armstrong's medical needs. *See Domino*, 239 F.3d at 756. Moreover, according to the evidence, Armstrong's hormone levels were unaffected by any delay, negating any claim that she suffered harm as a result.

   4. <u>Conclusion</u>

In sum, the denial of Armstrong's request for SRS does not, as a matter of law, constitute deliberate indifference nor is it "unusual." *See Gibson*, 920 F.3d at 220–28. The medical records, which are the bulk of the summary judgment evidence in this case, establish a course of medical treatment provided to Armstrong for her gender dysphoria over many months, resulting in changes in hormone levels and physical appearance. (ECF No. 71–2, pp. 2–14, 98–2, pp. 2–342). Armstrong cannot contend Defendants were deliberately indifference to her serious medical needs when she has received and continues to receive treatment for her gender dysphoria, albeit by means other than SRS. The medical records also negate any claim of deliberate indifference resulting in harm due to any delays in the provision of treatment. (*Id.*).

The medical records establish a lack of deliberate indifference as a matter of law and Armstrong did not submit "significant probative evidence" in response. In other words, she did not provide evidence from which a jury could reasonably find in her favor and her "evidence" failed to raise doubt as to any material facts. *See Gutterman*, 896 F.2d at 118. Therefore, Dr. Meyer, Cain, Herrera, Cruz, and Gloor are entitled to summary judgment with regard to Armstrong's section 1983 claims based on the Eighth Amendment.

## Fourteenth Amendment Claims – Violation of Equal Protection

As to her civil rights claims based on the Fourteenth Amendment, Armstrong contends Defendants violated her right to equal protection by denying her request for SRS and refusing to give her access to "personal items approved and available to inmates in female institutions." The defendants contend Armstrong cannot maintain her Fourteenth Amendment claims as a matter of law.

1. *Applicable Law*

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall deny to any person within its jurisdiction equal protection of the law. U.S. CONST., amend. XIV. This is essentially a requirement that all similarly situated persons be treated alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To establish a Fourteenth Amendment equal protection claim, an inmate must allege and prove he or she received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent. *McFaul v. Valenzuela*, 684 F.3d 564, 577 (5th Cir. 2012). In other words, an inmate must demonstrate: (1) the state created two or more classifications of similarly situated inmates that were treated differently; and (2) the classification had no rational relation to any legitimate governmental interest. *Johnson v. Rodriguez*, 110 F.3d 299, 306–07 (5th Cir. 1997). Different treatment of those who are not similarly situated does not offend equal protection. *Apache Bend Apts., Ltd. V. United States ex rel. IRS*, 987 F.2d 1174, 1182 (5th Cir. 1993) (Goldberg, J., dissenting).

2. *Sexual Reassignment Surgery*

With regard to this claim, Defendants point to an absence of evidence that they created two or more classifications of similarly situated prisoners that were treated differently stemming

from discriminatory intent. (ECF Nos. 42, 45). It is undisputed that TDCJ does not provide SRS to *anyone*. *See Gibson*, 920 F.3d at 227–28. Thus, there are no transgendered inmates in one classification that receive SRS when others in a different classification do not. Armstrong attempts to liken herself to cisgender[5] female inmates who can apply for, and may receive, certain surgical procedures in the event they suffer from a significant *disfigurement* and associated psychological issues. (ECF No. 31). Some of these available surgical procedures may include those sought by Armstrong through SRS, e.g., vaginoplasty. However, transgender inmates and disfigured female inmates are not "similarly situated." In the first instance Armstrong is not "female," she is "transgender" female, and in the second instance, Armstrong's medical issue is gender dysphoria, not a significant, physical disfigurement. (ECF Nos. 31, 71–2, pp. 2–14).

Recently, a transgender female suffering from gender dysphoria like Armstrong alleged the prison's denial of her request for SRS violated the equal protection clause. *Williams v. Kelly*, Civil Action No. 17-12993, 2018 WL 4403381, at *11–12 (E.D. La. Aug. 27, 2018), *report and recommendation adopted*, 2018 WL 4386178 (E.D. La. Sept. 14, 2018). The court disagreed, finding the transgender inmate did not allege she was treated differently from other inmates suffering from gender dysphoria and she was not a member of the class of prisoners, i.e., cisgender females, that she used as a basis for comparison. *Id. Per force*, there was no violation of equal protection. *Id.*

In reaching this conclusion, the court noted the Supreme Court has consistently upheld statutes where gender classification is not invidious, but rather realistically reflects the fact that

---

[5] Cisgender individuals are those whose gender identity corresponds to their sex at birth. *Williams v. Kelly*, Civil Action No. 17-12993, 2018 WL 4403381, at *12 n.25 (E.D. La. Aug. 27, 2018) (quoting *Campbell v. Kallas*, No. 16-cv-261, 2018 WL 2089351, at *1 n.1 (W.D. Wis. May 4, 2018) (citing OXFORD ENGLISH DICTIONARY (3d ed. 2015)), *report and recommendation adopted by*, 2018 WL 4386178 (E.D. La. Sept. 14, 2018).

the sexes are not similarly situated in certain circumstances. *Id.* (quoting *Michael M. v. Superior Court*, 450 U.S. 464, 469 (1981)).

Armstrong is like the inmate in *Williams*, attempting to equate himself as a transgender male to a cisgender female for purposes of an equal protection claim. However, Armstrong is not similarly situated. Accordingly, because there is an absence of evidence that Armstrong was treated differently from those similarly situated with regard to SRS, Defendants are entitled to summary judgment. *See Lujan*, 497 U.S. at 885.

3. <u>Female Commissary Products</u>

Armstrong also claims a violation of the Equal Protection Clause based on the defendants' alleged refusal to allow her access to "personal items approved and available to female" inmates. (ECF No. 31). However, Armstrong is housed in the McConnell Unit of the TDCJ. (ECF No. 31). The McConnell Unit houses male offenders but the inmates to which Armstrong attempts to compare himself are housed in units for female offenders. *See* https://www.tdcj.texas.gov/unit_directory/ml.html (last visited Jan. 14, 2020). Thus, Armstrong is not similarly situated to those with whom she attempts to compare herself for purposes of the Equal Protection Clause. *See, e.g., Longoria v. Dretke*, 507 F.3d 898, 904–05 (5th Cir. 2007) (holding male prison's grooming policies did not violate equal protection rights based on different policy at female prison); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (holding inmates with different housing classifications are not similarly situated). Accordingly, because there is an absence of evidence that Armstrong was treated differently from those similarly situated with regard to the provision of commissary items, Defendants are entitled to summary judgment on this claim. *See Lujan*, 497 U.S. at 885.

***Qualified Immunity***

In the Court's previous Order, it was noted that Defendants, in their individual capacities, were entitled to invoke qualified immunity, mandating that Armstrong allege particular facts or present proof of a violation of her clearly established constitutional rights to avoid summary judgment. (ECF No. 90). The Court finds Armstrong has failed to carry her burden.

1. *Applicable Law*

As noted above, once a state official or employee asserts qualified immunity, the summary judgment *nonmovant* has the burden to show there is a genuine and material dispute as to whether qualified immunity applies. *See Thompson*, 245 F.3d at 35. Under the qualified immunity doctrine, government officials sued in their individual capacity under section 1983 are entitled to qualified immunity with regard to discretionary functions as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015).

The Supreme Court has recognized a two-pronged approach for resolving government officials' qualified immunity claims. *Tolan v. Cotton*, 572 U.S. 650, 655 (2019). Under the first prong, the court must decide whether the facts alleged or shown make out a violation of a constitutional right. *Id.* at 655–56. The second prong requires the court to decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct. *Id.* at 656. Courts are free to decide in which order to address the two prongs of the qualified-immunity analysis. *Id.*

The Court begins with the first prong, i.e., whether the facts alleged by Armstrong make out a violation of a constitutional right. *Id.* at 655–56. Based on the analysis of Armstrong's claims under the Eighth and Fourteenth Amendments, the Court finds Armstrong has not alleged

facts showing a constitutional violation. Specifically, even when the evidence is viewed in the light most favorable to Armstrong, she has failed to allege facts establishing a violation of the Eighth Amendment because her facts, as alleged, do not rise the level of deliberate indifference, which is required for Eighth Amendment claims. *See Farmer*, 511 U.S. at 837; *Gibson*, 920 F.3d at 220. Additionally, Armstrong has failed to allege facts sufficient to make out a claim under the Fourteenth Amendment because her alleged facts do not show she is similarly situated to those to which she compares herself for purposes of these claims. *See Williams*, 2018 WL 4403381, at *11–12; *Longoria*, 507 F.3d at 904–05.

Having failed to allege facts or present evidence sufficient to show a constitutional violation, Armstrong cannot defeat the assertion of qualified immunity. *See Tolan v. Cotton*, 572 U.S. at 655–56. Accordingly, the Court finds Defendants—Dr. Meyer, Cain, Herrera, Cruz, and Gloor[6]—are entitled to summary judgment in their individual capacities based on the qualified immunity doctrine.

## Conclusion

For the reasons set out above, the Court finds summary judgment in favor of Defendants Dr. Meyer, Cain, Herrera, Cruz, and Gloor is proper in their individual capacities with regard to Armstrong's various section 1983 claims under the Eighth and Fourteenth Amendments.

**IT IS THEREFORE ORDERED** that Defendant Dr. Walter Meyer's Motion for Summary Judgment as to claims against him in his individual capacity is **GRANTED**.

---

[6] To the extent Armstrong alleges Gloor violated her constitutional rights by denying various grievances, summary judgment is proper. Inmates do not have a federally protected liberty interest in having grievances addressed and resolved to their satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Thus, any complaints by Armstrong about Gloor's responses to the numerous grievances do not amount to constitutional violations.

**IT IS FURTHER ORDERED** that Defendants Patience Cain, Jolly Herrera, Gloria Cruz, and Debra Gloor's Motion for Summary Judgment as to claims against them in their individual capacities is **GRANTED**.

**IT IS FINALLY ORDERED** that Plaintiff Perzia Bakari Armstrong shall take nothing in this cause against Defendants Dr. Walter Meyer, Patience Cain, Jolly Herrera, Gloria Cruz, and Debra Gloor.

SIGNED this 15th day of January, 2020.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE